UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PAUL HARNEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:16-CV-1614 (CEJ) |
| KRAMER AND FRANK, P.C., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss plaintiff's claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has responded in opposition, and the issues are fully briefed.

### I. Background

Defendant is a law firm that represents the Metropolitan St. Louis Sewer District (MSD) in a pending state court action against plaintiff to recover $1,094.48 in delinquent wastewater and stormwater service charges (collectively, the sewer charges) assessed against a residence. *Metro. St. Louis Sewer Dist. v. Angelina Pettinelli and Paul Harney*, Case No. 1522-AC-12924 (Mo. Cir. Ct. Oct. 26, 2015); [Doc. #17 at 2]. After the state court action was filed on October 26, 2015, plaintiff informed defendant that he had hot lived at the residence since 2005. *Id.* He also told defendant that Angelina Pettinelli became the owner of the property pursuant to a 2007 divorce decree.[1] *Id.* at 3. However, defendant continued to prosecute the suit against "when it [had] no good faith reason to believe that he incurred the debt." *Id.* at 3. Plaintiff further alleges that on June 20, 2016, defendant and

---

[1] Notably the charges at issue began accruing on August 17, 2015. [Doc. #17 at 2].

Pettinelli entered into a "repayment agreement for the debt incurred" at the residence. *Id.* Despite this, defendant continued to pursue litigation against plaintiff for the full amount of the charges, without giving plaintiff credit for amounts that have been paid pursuant to the repayment agreement. *Id.*

Plaintiff asserts that the defendant's debt collection efforts violated the Federal Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692, *et seq.* Plaintiff claims that defendant (1) took "action that it could not legally take by filing suit against plaintiff" in violation of 15 U.S.C. § 1692e(5),[2] (2) used "false, deceptive, or misleading representation or means in connection with the debt collection," in violation of 15 U.S.C. §§ 1692e,[3] e(10),[4] (3) engaged in "unfair and unconscionable means in the attempt to collect a debt," in violation of 15 U.S.C. § 1692f,[5] and (4) attempted to "collect an amount not authorized by agreement or law," in violation of 15 U.S.C. § 1692f.[6] *Id.* at 4.

In the instant motion defendant argues that the Court should dismiss plaintiff's amended complaint for failure to state a claim, because the FDCPA does not govern the sewer charges, as they are not a "debt" as defined under the statute. 15 U.S.C. § 1692a(5).

---

[2] The Court notes that the language in § 1692e(5) is different from the language presented in plaintiff's claim. Section e(5) states that "[t]he *threat* to take any action that cannot legally be taken or *that is not intended* to be taken" constitutes a violation of this section. 15 U.S.C. § 1692e(5).
[3] Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.
[4] Section 1692e(10) provides that "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" constitutes a violation of this section. 15 U.S.C. § 1692e(10).
[5] § 1692(f) generally provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.
[6] Section 1692f proscribes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

## II. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002)); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. *Scheuer*, 416 U.S. at 236. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see id.* at 563 (stating that the "no set of facts" language in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in *Twombly* applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When ruling on a motion to dismiss, a court generally may not consider matters outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). It may, however, consider matters of public records, materials that do not contradict the complaint, exhibits attached to the pleadings, and materials necessarily embraced by the complaint. *Mills v. City of*

3

*Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010). Defendant has provided certified copies of the MSD Charter, as well as MSD Ordinances in support of its motion to dismiss. The Court has considered these public records in ruling on the instant motion. Also, plaintiff has included exhibits in support of its response; however, those exhibits were not pertinent to legal issues presented in defendant's motion and the Court therefore has not considered them.

### III. Discussion

Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e)." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010). To state a claim for a violation of the FDCPA, a plaintiff must plead that he is a consumer and that the defendant is a debt collector within the meaning of the statute; that there was an attempt to collect a debt; and that the defendant violated, by act or omission, a provision of the FDCPA. *Mayhall v. Berman & Rabin, P.A.*, No. 4:13-CV-175 (AGF), 2014 WL 340215, at *4 (E.D. Mo. Jan. 30, 2014). It is undisputed that plaintiff is a consumer and defendant is a debt collector within the meaning of the FDCPA. Defendant does not meaningfully contest that it violated, by act or omission, a provision of the FDCPA.[7] Rather, defendant argues that plaintiff has not properly alleged the threshold requirement that the sewer charges constitute a "debt" within the meaning of the statute, and has therefore failed to state a claim as a matter of law. *See Donnelly-*

---

[7] Defendant states that "the Court does not need to consider or decide whether Harney is a record owner of the property and thus personally liable for the MSD charges," as it argued in its original, moot motion to dismiss. [Doc. #23 at 2].

*Tovar v. Select Portfolio Servicing, Inc.*, 945 F. Supp. 2d 1037, 1043–44 (D. Neb. 2013).

The FDCPA defines "debt" as:

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5).

Based on the ordinary meaning of the words in this definition, the sewer charge obligation arose from services for a residential property or household purposes. *See Mathis v. United States*, No. CIV-02-4087, 2003 WL 1950071, at *6 (D. S.D. Mar. 19, 2003) (explaining that "the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value") (quoting *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980)); *Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1001 (8th Cir. 2011) (reasoning that courts look to the ordinary meaning of the FDCPA's plain language to determine the meaning of terms). Defendant does not assert otherwise.

The question remains, however, whether the sewer charges qualify as "transactions." *See Duffy v. Landberg*, 133 F.3d 1120, 1123 (8th Cir. 1998) (reasoning that "[t]he FDCPA is clearly worded and broadly defines debt as 'any obligation' to pay arising out of a consumer transaction.") A transaction "is a broad reference to many different types of business dealings between parties." *Bass v. Stopler, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1325 (7th Cir. 1997) (citing Webster's New World Dictionary 1509 (2d ed. 1986)). Moreover, '[a] debt under the FDCPA can only arise as a result of a *consensual* transaction for the

purchase of consumer goods or services.'" *Mills v. City of Springfield, Mo.*, No. 2:10-CV-04036-NKL, 2010 WL 3526208, at *15 (W.D. Mo. Sept. 3, 2010) (holding that red light tickets were not voluntary consumer transactions, and thus not "debt" under the FDCPA) (internal quotation marks and citations omitted) (emphasis added)); *see also Graham v. ACS State & Local Sols., Inc.*, Civ. No. 06-2708 (JNE/JJG), 2006 WL 2911780, at *2 (D. Minn. Oct. 10, 2006) (holding that parking tickets were not consensual consumer transactions, and did not fall within the FDCPA).

The Eighth Circuit has not yet addressed the precise question of whether utility charges such as these meet the definition of "debt" under the FDCPA. Therefore, defendant relies on the Second Circuit's decision in *Boyd v. J.E. Robert Co.*, 765 F.3d 123 (2d Cir. 2014), to argue that municipal wastewater service charges do not constitute debt under the FDCPA – because they are not consensual consumer transactions. In *Boyd*, the court held that "liens for mandatory water and sewer charges imposed by New York City as an incident to property ownership, which are treated as akin to property tax liens, are not subject to the FDCPA because they do not involve a 'debt' as that term is defined in the statute." *Id.* at 124. The court, in large part, hinged its decision on the mandatory nature of the water and sewer charges. Because of the mandatory nature of the charges, "the relationship between plaintiffs and the City with respect to such charges is akin to 'taxpayer and taxing authority,' and 'does not encompass that type of *pro tanto* exchange which the statutory definition envisages.'" *Id.* at 126 (quoting *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998)). *Boyd* also relied on the legal actions in question, as "the actions to foreclose the liens in question were instituted pursuant

to New York law governing 'tax liens,'"; and "the city ordinance governing foreclosure of water and sewer liens requires that they be conducted 'in the same manner as a lien for [] taxes.'" *Id.*[8]

Defendant acknowledges but attempts to distinguish the Third Circuit's decision in *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000). *Pollice* held that municipal water and sewer service liens *were* debt, as "homeowners (consumers of water and sewer services) had an obligation … to pay money to the government entities which arose out of a transaction (requesting water and sewer service) the subject of which was services … primarily for personal, family, or household purposes." *Id.* at 400 (internal quotation marks omitted). Although defendant distinguishes *Pollice* on the grounds of the voluntary request in that case, defendant fails to cite or adapt its argument to the Third Circuit's more recent decision in *Piper v. Portnoff Law Associates, Ltd.*, 396 F.3d 227 (3d Cir. 2005).

*Piper* clarified the scope of what constitutes a consumer request for services. Specifically, the court reasoned that it was "clear from *Pollice* that whenever a homeowner voluntarily elects to avail himself of municipal water/sewer services, in whatever manner, and thereby incurs an obligation to pay for such services, there is the kind of *pro tanto* exchange contemplated by the FDCPA." *Id.* at 233 n.8. It was of no consequence to the *Piper* court that the consumer "did not have to file and application for water/sewer services." *Id.* Instead, the court noted that "[i]t is apparent from the Pipers' account with the City that their service was metered in

---

[8] Moreover, the district court's reasoning in *Boyd* emphasized that the bundling of utility charges and property taxes impacted the holding. No. 05-CV-2455, 2012 WL 4718723, at 15–16 (E.D.N.Y. Sept. 27, 2013) (reasoning that "the liens in *Pollice* do not appear to be bundled liens composed of tax and utility obligations," and therefore "the *Pollice* court did not consider or rule on liens with mixed obligations bundled into one instrument, which includes substantial tax obligations.")

the normal fashion and that the amount of their obligation to pay was based on the amount of water they chose to use." *Id.*

Here, the MSD ordinances are more akin to those in *Piper*. Indeed, the stormwater ordinance– Ordinance 13938 – defines "property" as a parcel of real estate "*served* by the Stormwater System," not merely one *located* in the District. St. Louis, Mo., Ordinance 13938 (Aug. 5, 2014). And Wastewater Ordinance Number 14395 provides that "[t]he District will not collect Wastewater User Charges from the Owner of real Property when it is known that said real Property is connected to a septic tank…" St. Louis, MO, Wastewater Ordinance 14395 (June 9, 2016) (repealing and superseding Ordinances 13937 and 13758).[9] Therefore, a landowner does not incur automatic, mandatory MSD wastewater charges simply by holding or purchasing property in the district, as defendant claims. *See* [Doc. #23 at 7]. Further, the same ordinance states that user charges are calculated as follows:

> (1) "Each Metered Property shall be charged a Base Charge and a Volume Charge as set forth in Appendix 1. The Volume Charge shall be calculated separately for each Metered Property, using the most current determination of Contributed Wastewater Volume.

Accordingly here, as in *Piper*, "the amount of [consumers'] obligation [is] based on the amount of water they chose to use." *Piper*, 396 F.3d at 233 n.8; *see also Clay v. Melchionne*, No. 3:00-CV00056-AHN, 2000 WL 1838368, at *2 (D. Conn. Dec. 7, 2000) (holding that a water usage fee met the definition of a "debt" under the FDCPA); *c.f. Reilly v. Ne. Revenue Servs., LLC*, No. 3:12-CV-02312, 2013 WL

---

[9] MSD Ordinance 13937, which was superseded by Ordinance 14395 in 2016, contained substantially similar provisions. St. Louis, MO, Ordinance 13937 (June 9, 2016).

3974181, at *6 (M.D. Pa. Aug. 1, 2013) (reasoning that waste collection fees did not constitute "debt" because "the fee is not based on the amount of waste an owner or resident chooses to dispose unlike the metered water service considered in *Piper*.").

Thus, the Court finds that the sewer charges meet the definition of "debt" under the FDCPA as they are "consensual or consumer transactions." *See Mills v. City of Springfield, Mo.*, No. 2:10-CV-04036-NKL, 2010 WL 3526208, at *15 (W.D. Mo. Sept. 3, 2010) (holding that red light tickets and the consequential imposition of fines were not "consensual"). Additionally, this interpretation better adheres to the broad definitions afforded under the statute, in ensuring its remedial purpose. *See, Picht v. Hawks*, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999), *aff'd* 236 F.3d 446 (8th Cir. 2001) (reasoning that the FDCPA is a broad remedial statute "intended to be applied in a liberal manner"). It is not beyond plausibility that that the wastewater service charges are consumer debts and that plaintiff could establish his claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [Doc. #22] is **denied.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 24th day of April, 2017.